## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>DANNY MICHAEL HARVEY,<br><br>Defendant. | 3:07-CR-00103-RRB-DMS<br><br>**AMENDED ORDER REGARDING DEFENDANT'S MOTION FOR ORDER COMPELLING DISCOVERY OF ALL COMPUTER-RELATED EVIDENCE SEIZED FROM DANNY HARVEY [Doc. 45]** |

## I. INTRODUCTION

Two computers were seized from Defendant Danny Michael Harvey during the investigation of this matter. The defendant requests that copies of the two computer hard drives be provided to defense counsel for review by a computer forensic expert. The Government contends that both hard drives contain images that constitute child pornography. The hard drives also allegedly contain evidence of on-line chats and emails between Harvey and an undercover officer, which are relied upon by the Government to prove a charge of attempted aggravated sexual abuse of a minor.

The defense requests that this discovery material be made available as it was in the past, pursuant to a detailed protective order that specified how the copied hard drives would be handled while in the possession of defense counsel for the purpose of discovery. (See Doc. 73-2, Affidavit of Bruce Johnson, Federal Public Defender Investigator, District of Alaska). These precautions were taken to insure there was no further copying, viewing or distribution of the images, beyond that necessary to prepare the legal defense. The defense relies upon Fed. R. Crim. P. 16 and United States v. Hill, 322 F. Supp. 2d 1081 (C.D. Cal. 2004), in which the Court

approved such a protective order.

The Government refuses to deliver the copies, arguing that the 2006 Adam Walsh Child Protection and Safety Act (hereafter the Walsh Act)—specifically 18 U.S.C. § 3509(m)—directs prosecutors and investigators in criminal cases to retain all child pornography in the Government's care, custody and control. The Government argues that it will provide ample opportunity for the defense examination of mirrored hard drives while in Government custody and, as a result, the Walsh Act prohibits the Court from ordering the Government to produce a copy of each hard drive for delivery to the office of defense counsel.

Harvey responds that 18 U.S.C. § 3509(m) is unconstitutional both facially and as applied in this case. He contends that he is entitled to copies of the hard drives under the Fifth Amendment's Due Process clause and the Sixth Amendment's Compulsory Process and Effective Assistance of Counsel clauses.

Other District Courts around the country have considered whether this section of the Walsh Act is constitutional when applied to child pornography on a hard drive. No circuit courts have addressed the issue to date. Also, this Court has been unable to locate any precedent which addresses the constitutionality of the Walsh Act when applied to a hard drive that contains not only child pornography but written emails and on-line chats from the defendant, which are relevant to a charge other than possession or distribution of child pornography.

## II. <u>STATEMENT OF FACTS</u>

In a superseding indictment December 12, 2007, Harvey was charged with attempted aggravated sexual abuse in violation of 18 U.S.C. § 2241(c); transportation of child pornography in violation of 18 U.S.C. § 2252(a)(1) and (b)(1) and possession of child pornography in

2

violation of 18 U.S.C. § 2252(a)(4)(B) and (b)(2). Federal law enforcement agents arrested Harvey after he deplaned at the Ted Stevens International Airport in Anchorage, Alaska. The agents seized Harvey's Dell laptop computer. Later that day, federal agents seized a Northgate desktop computer from Harvey's home in California.

Prior to passage of the Walsh Act, in federal child pornography prosecutions in Alaska, the Government often provided the defense team with a copy of any computer hard drive which contained evidence considered to be child pornography, as long as an appropriate protective order was in place. (Tr. 17, 76, Doc. 73-2, Johnson Affidavit). Since the passage of 18 U.S.C. § 3509(m), the Government no longer abides by this practice.

At the evidentiary hearing, Marcus Kenneth Lawson from Spokane, Washington testified as Harvey's computer forensics expert. Mr. Lawson is the President of Global CompuSearch LLC, which provides forensic computer investigations. Earlier in his career, Mr. Lawson worked for U.S. Customs as an agent specializing in child pornography computer forensic investigations. (Tr. 13). Mr. Lawson testified about the steps required for an effective analysis, including the need for specific equipment; access to the tools in his laboratory; access to his experienced colleagues; access to the Internet and access to defense counsel during the analysis.

The defense also relied upon the affidavits of Government agents filed in support of two search warrants in this case. The affidavits established the surroundings and circumstances necessary for an effective computer forensics exam. (Doc. 42-3, Affidavit of Special Agent Skinner, Defendant's Exhibit C at the evidentiary hearing) and (Doc. 40-3, Affidavit of Special Agent Laws, Defendant's Exhibit B at the evidentiary hearing).

In his search warrant application and affidavit, Special Agent Kevin Laws of Immigration

3

and Customs Enforcement (ICE) stated that reviewing data on a computer hard drive can take weeks or months; that it is impossible to attempt a computer review at the residence or office being searched; that searching computer systems for criminal evidence is very technical and requires a controlled environment. He added that it is difficult to know before a search what types of hardware and software are located on a computer, and therefore it is hard to know what type of experts and equipment are needed to analyze the computer and its data.

Special Agent Skinner of ICE stated in his affidavit that it is impossible to bring all of the technical manuals and specialized equipment necessary to conduct a thorough search to a search site; that a substantial amount of time is necessary to complete an analysis of a computer and a controlled environment is necessary. During the evidentiary hearing, Mr. Lawson agreed with the statements of both Agents Laws and Skinner. (Tr. 19-22). Mr. Lawson stated that an on-site analysis, away from his laboratory, is difficult because running the required programs can take a long time and extend into the night. (Tr. 22-23).

Mr. Lawson and his staff at CompuSearch LLC have encountered the following problems when conducting computer analyses away from their office, at a Government facility. (Tr. 19-43; Doc. 46-2, Affidavit of Lawson, incorporated by reference in evidentiary hearing Tr. 57):

1) Limited hours. Many times the Government will only provide limited hours to conduct an analysis. Government buildings have restricted hours–usually 9:00 a.m. to 5:00 p.m.–that prevent his team of experts from running a search or test after hours. Because various diagnostic programs frequently run into the night, if access is cut off at 5 p.m., the analysis can take much longer and may not be as effective.

2) Limited privacy. Frequently the Government will place an agent inside the room with

defense experts. In these situations, defense experts are not able to have the requisite privacy and confidentiality needed to talk about the results with other experts and to talk with defense counsel about their findings. Also, the Government agents inside the room are often distracting and noisy, according to Mr. Lawson.

3) <u>Limited contact</u>. Often the Government will not provide phone access to the defense team. The rooms provided are in the basement where there is no cell service and no telephone land lines (also referred to as fixed phone lines). This deficiency makes it difficult for the experts to consult with their colleagues and the attorneys.

4) <u>No Internet access</u>. Often an expert will need access to the Internet to conduct research to solve problems that occur during an analysis. The Government facilities provided to the defense team usually do not provide Internet access.

5) <u>Inadequate preparation time</u>. Because of the access limitations, both before and during trial, the defense experts cannot be as prepared for trial as they would like to be and this deficiency is often exploited by the prosecution, who then make the defense experts appear unprepared or less knowledgeable about the evidence than the prosecution's experts, according to Mr. Lawson.

6) <u>Damage to equipment</u>. Transporting the expert's machines and tools often damage them and crucial time is spent fixing equipment instead of conducting the required analyses.

Mr. Lawson also testified that forensic computer analysis is crucial for the defense in any case involving child pornography or attempted aggravated assault on a child. Such analyses can reveal evidence of multiple users (Tr. 25); verify that any Internet chats reported by the Government are correct and presented in the proper context (Tr. 26, 28); profile the types of users

5

in any chat rooms that may be at issue in the case (Tr. 28); determine the age of the people in

any images involved in the case and whether or not the people in the images are real or virtual

(Tr. 28, 30). It can also find evidence that reflects on whether or not the defendant intended to

possess such child pornography. (Tr. 53).

Mr. Lawson and Harvey's counsel stressed that the biggest concern about 18 U.S.C.

§ 3905(m) is the effect it has on the defense at trial. Mr. Lawson testified that his team will often

run tests and check data during a trial and after the trial has ended for the day. (Tr. 33-38, 39).

He said he often has associates stay late after a day of trial testimony to conduct tests and look up

data. (Tr. 75). According to Mr. Lawson, restrictive access to the copied hard drives during trial

is an extreme handicap for the defense team. (Tr. 36-38).

Mr. Lawson testified that since the passage of the Walsh Act, many forensic computer

analysts will not work for a defense team because it is too difficult to conduct analyses in a

Government office, transporting their diagnostic equipment. (Tr. 83-40). Despite the

difficulties, Lawson's company still performs defense computer analyses. (Tr. 40). His

company has conducted forty to forty-five cases on the road since the passage of the Walsh Act

(Tr. 72). According to Mr. Lawson, he believes that he and his staff did not do an adequate job

when testifying in court because of the access limitations. (Tr. 77).

Agent Laws testified as the Government's expert witness on computer forensics. He

stated that, in his view, it is possible to do an effective defense forensic computer analysis at a

Government office, notwithstanding his comments in his search warrant application about the

difficulties of conducting a government forensic examination off-site. He testified that once the

initial processing of a computer hard drive is complete, an expert then knows what tools and

software will be necessary to complete the forensic analysis. (Tr. 89). He said he did not believe it would give his adversaries insight into his work if the experts knew how often and how long he looked at the computer evidence. (Tr. 103-104). Agent Laws testified that in this case, the defense would have its own room at the ICE facility in Anchorage to conduct discovery of the hard drives. The room would be available to the defense team twenty-four hours a day, before and during trial. An agent will be posted outside the door to the room when the defense team is inside, but the defense team will have privacy inside the room. He said the agent nearby was necessary because the ICE office was in a secure building. He testified that the defense team would be allowed to bring in any equipment needed and that the Government would provide a phone line and Internet access. (Tr. 84-85).

In Alaska prior to the Walsh Act, the Government provided mirrored hard drives to the defense attorney or expert. (Tr. 107). The attorney and analyst signed an agreement in which the defense team agreed not to publish or distribute the material and to return the hard drive to the Government after the proceedings. (Tr. 107). Agent Laws testified there was never a situation in Alaska when a defense attorney or computer analyst lost or distributed a mirrored hard drive. (Tr. 106). He was unaware of this ever happening nationwide. The single instance he knew of when a computer hard drive containing child pornography was lost, occurred when it was in the custody of the Government. (Tr. 110-111).

The Federal Public Defender's criminal defense investigator, Mr. Bruce Johnson, stated that prior to the Walsh Act, the Government routinely provided copies of computer evidence to the Public Defender's office , subject to appropriate protective orders. (Doc. 73-2, Affidavit of Johnson at 2). Mr. Johnson maintained exclusive control of all computer evidence received and

he placed such materials in a secure safe.  He and the office administrator were the only two people with the key and security code to the safe, and he was the only person to ever access the safe.  (Doc. 73-2, Affidavit of Bruce Johnson at 3).  Whenever he had to remove computer evidence from the safe, he documented the chain-of-custody and the date and time of its removal. (Doc. 73-2, Affidavit of Bruce Johnson at 4).  He was the only person in the office who conducted analyses of the computer evidence, which ran in his secured office (Doc. 73-2, Affidavit of Bruce Johnson at 4).   Upon completion of an analysis, he returned all computer evidence to the Government and permanently removed and deleted files and remnants of the hard drive from his office computer.  (Doc. 73-2, Affidavit of Bruce Johnson at 5).

### III.  ANALYSIS

#### A.  Rule 16(a)(1)(E) of the Federal Rules of Criminal Procedure

Prior to the passage of the Walsh Act, which became effective on July 27, 2006, Rule 16(a)(1)(E) of the Federal Rules of Criminal Procedure governed whether or not the prosecution provided the defense team copies of hard drives containing alleged child pornography.  Harvey asserts that under Rule 16(a)(1)(E), this Court can order the Government to produce a mirror-image of the two computer hard drives, citing United States v. Hill, 322 F. Supp.2d 1081 (C.D. Cal 2004) for the proposition that it is not an abuse of discretion to order production of contraband such as child pornography with an appropriate protective order in place.    However, the Government asserts that Rule 16(a)(1)(E) is no longer controlling in child pornography cases since the passage of the Walsh Act.

Title 18 U.S.C. § 3509(m) states as follows:

**(m)** Prohibition on reproduction of child pornography.--

8

**(1)** In any criminal proceeding, any property or material that

constitutes child pornography (as defined by section 2256 of this title)

shall remain in the care, custody, and control of either the

Government or the court.

**(2) (A)** Notwithstanding Rule 16 of the Federal Rules of

Criminal Procedure, a court shall deny, in any criminal proceeding,

any request by the defendant to copy, photograph, duplicate, or

otherwise reproduce any property or material that constitutes child

pornography (as defined by section 2256 of this title), so long as the

Government makes the property or material reasonably available to

the defendant.

**(B)** For the purposes of subparagraph (A), property or

material shall be deemed to be reasonably available to the defendant

if the Government provides ample opportunity for inspection,

viewing, and examination at a Government facility of the property or

material by the defendant, his or her attorney, and any individual the

defendant may seek to qualify to furnish expert testimony at trial.

Section 3509(m)(2)(A) clearly nullifies the copying requirements of Rule 16 as applied to child

pornography.

## B.  Constitutionality of 18 U.S.C. § 3509(m)

Harvey challenges 18 U.S.C. § 3509(m) as it applies to computer evidence.  He argues

that in situations where computer evidence is involved, the statute violates a Defendant's Fifth

9

Amendment Due Process rights and Sixth Amendment Compulsory Process and Effective Assistance of Counsel rights.

To date, it appears as though no appellate court has reviewed the constitutionality of § 3509(m). However, District Courts around the country have addressed the issue. All have ruled that the statute is constitutional. <u>See</u> <u>United States v. Sturm</u>, No. 06-CR-00342, 2007 WL 1453108 (D. Colo. May 17, 2007) (rejecting defendant's constitutional challenges to the Walsh Act, both facially and as applied, holding that the requirements of Subsections (2)(A) and (2)(B) of § 3509(m) are "consistent, if not coterminous, with the due process guarantee that [defendant] be afforded a 'fair opportunity to defend against the [Government's] accusations,'" and holding that because the defendant made no attempt to reach an accommodation with the United States, his as-applied challenge also fails); <u>United States v. Doane</u>, 501 F. Supp. 2d 897 (E.D. Ky. 2007) (finding that the case law does not support the defendant's position that requiring defense expert to examine a computer hard drive at a Government facility interferes with defendant's constitutional rights to investigate charges and to have assistance of counsel and due process because such access is "ample opportunity" under the statute); <u>United States v. Renshaw</u>, No. 05-CR-00165, 2007 WL 710239 (S.D. Ohio Mar. 6, 2007) (finding that although "Section 3509(m) may inconvenience trial counsel and [d]efendant's experts, it does not preclude defendant from preparing his case for trial" and because the statue provides a safety valve permitting the court to order the production of evidence where the Government does not make it reasonably available, there is no basis for a due process challenge and therefore the statute does not necessarily deny defendant a fair trial); <u>United States v. O'Rourke</u>, 470 F. Supp. 2d 1049, 1054-55 (D. Ariz. 2007) (rejecting defendant's constitutional challenges to the Walsh Act, both facially and as applied,

holding defendant was not deprived of due process by any Government refusal to give defense experts private access to the Internet when performing their analysis of the hard drive taken from defendant's computer); United States v. Knellinger, 471 F. Supp. 2d 640, 650 (E.D. Va. 2007) (noting that such an evaluation to compel duplication of materials should be made on a case-by-case basis, and holding that while the statute was constitutional, the Government had not given ample access to defense experts); United States v. Johnson, 456 F. Supp. 2d 1014, 1019-20 (N.D. Iowa 2006) (finding that the statute did not, as applied, unduly burden defendant's Fifth Amendment rights to due process and fair trial and Sixth Amendment right to effective assistance of counsel, and the statute did not unreasonably restrict defendant's access to services of computer forensic expert); United States v. Spivack, No. 05-CR-98, 2007 WL 4593475 (E.D.N.Y. Nov. 29, 2007) (finding the statute constitutional and holding that defendant provided no evidence that Government failed to provide ample opportunity); United States v. Battaglia, No. 07-CR-0055, 2007 WL 1831108 (N.D. Ohio June 25, 2007) (finding the statute constitutional and finding that Government provided ample opportunity); and United States v. Flinn, No. S-05-314, 2007 WL 3034932 (E.D. Cal. Oct. 16, 2007) (finding the statute constitutional and finding that defense had not presented any case-specific concerns to establish the lack of ample opportunity).

In the O'Rouke case, the court rejected the defendant's as applied and facial challenges to 18 U.S.C. § 3509(m). While the defendant challenged the statue under both the Fifth and Sixth Amendment, the court addressed the statute's constitutionality under the Fifth Amendment's due process framework, finding that the Fifth Amendment's Due Process clause provides broader protections for a fair trial than the Sixth Amendment. O'Rouke, 470 F. Supp. 2d at 1054, fn 2

(citing Pennsylvania v. Ritchie, 480 U.S. 39, 56 (1987)). The court found that the statute does not provide for an absolute denial of a defense team's possession of alleged child pornography. Instead, the court noted that § 3509(m)(2)(A) denies the defense team possession of the material only if the Government otherwise makes the material "reasonably available" to the defendant. O'Rouke, 470 F. Supp. 2d at 1055. The court noted that subsection 3509(m)(2)(B) provides that the material is "reasonably available" to the defendant if "the Government provides ample opportunity for inspection, viewing , and examination at a Government facility" of the material by the defense team. Id. Therefore, according to the court, if the Government does not provide "ample opportunity" to analyze the material at a Government facility, the court can order the Government to provide a copy to the defendant. Id. The court concluded that "ample opportunity" is coterminous with the requirements of due process because it requires the Government to provide defendants the same access to material that due process mandates, otherwise the court can order the Government to give the defense team a copy of the hard drive. Id. at 1055-56.

In Knellinger, the court applied similar reasoning and found that the term "ample opportunity" could be construed to, at a minimum, protect the constitutional rights of defendants. 471 F. Supp. 2d 640, 644 (E.D. Va. 2007). It therefore held that 18 U.S.C. § 3509(m) was facially constitutional. Id. at 645. The court also held that the statute would not be unconstitutional as applied either because the statue permitted the court to remedy insufficient "ample opportunity" through a court order, thus rendering any as-applied challenge moot. Id. at 646. Applying the facts, the court found that the defense needed digital video experts to establish the defense that the images on his computer were virtual and not real. Id. at 647. The digital

Case 3:07-cr-00103-RRB     Document 104     Filed 01/07/08     Page 12 of 24

video experts who testified in the <u>Knellinger</u> case noted that they do not move the equipment needed to run digital video analysis and that it would be a great cost and effort to do so. They testified that they would not agree to service the defense team because their ability to do the job would be compromised. <u>Id.</u> at 646-48. The court ultimately found that the Government did not provide the defense team with an ample opportunity to inspect, view, and examine the child pornography because the experts needed to assert a "virtual-child" defense and could not conduct an analysis at a Government facility. <u>Id.</u> at 650. Therefore, the court ordered the Government to turn over a copy of the hard drive to the defense. <u>Id.</u>

In <u>Sturm</u>, the court adopted the reasoning of <u>O'Rouke</u> and <u>Knellinger</u>, and determined that 18 U.S.C. § 3509(m) is not facially unconstitutional. No. 06-CR-00342, 2007 WL 1453108 (D. Colo. May 17, 2007), at *7. It also determined that the defense did not present with precision any actual or anticipated problems because the defense has not yet attempted to examine the images or work out an accommodation with the Government. <u>Id.</u> The court refused to rule for the defense based on hypothetical scenarios that could arise in any case, considering that witnesses suggested solutions to any hypothetical problems presented. Id. at *7-*8.

This Court finds the reasoning applied in <u>O'Rouke</u>, <u>Knellinger</u>, and <u>Sturm</u> persuasive. There is no indication of the purpose of § 3509(m) in the legislative history accompanying the Walsh Act. <u>See</u> <u>O'Rouke</u>, 470 F. Supp. 2d at 1056 (citing 152 Cong. Rec. H676 (daily ed. Mar. 8, 2006) (statement of Rep. Conyers) and 152 Cong. Rec. H705-31 (daily ed. July 25, 2006)) (stating that § 3509(m) was added to the Walsh Act without consideration in committee and with virtually no explanation in the legislative history).

Nevertheless, it is the Court's responsibility to construe a statute to avoid a ruling of

unconstitutionality, if possible.  See Edward J. DeBartolo Corp. v. Florida Gulf Coast Building &

Constr. Trades Council, 485 U.S. 568, 575 (1988) (citing Grenada County Supervisors v. Brown,

112 U.S. 261, 269 (1884)) (stating that a statute should be given a reasonable construction so that

it is not ruled unconstitutional); United States v. Ray, 375 F.3d 980, 988-89 (9th Cir. 2004)

(applying doctrine of constitutional avoidance); Abner J. Mikva & Eric Lane, An Introduction to

Statutory Interpretation and Legislative Process 6-16, 23-27 (1997).  Therefore, the term "ample

opportunity" in 18 U.S.C. § 3509(m) must be read to at least include the same opportunity for

inspection, viewing, and examination that is required by Fifth and Sixth Amendments of the

Constitution.  In other words, Harvey's opportunity to view, inspect, and examine the evidence

must afford him a fair opportunity to defend against the Government's accusations as required by

due process.  If the Government is not providing a fair opportunity consistent with the Due

Process clause, this Court can order the Government to turn over a copy of the evidence.  This

Court's ability to order the production of evidence and correct any situation that does not amount

to "ample opportunity" renders any as-applied challenge moot.  Instead, this Court must examine

the facts to determine if the requisite access to the evidence will be provided to Harvey's defense

team.

        In this situation, Mr. Lawson testified that defense experts examining a hard drive in a

Government facility encounter a number of problems that make inspection, viewing, and

examination difficult, if not impossible.  These problems involve limited hours to access the

evidence; limited privacy; limited contact with colleagues and defense attorneys because of a

lack of phone reception; no Internet access to conduct research; inadequate preparation for trial,

and possible damage to equipment when traveling.  Harvey argues that because of these

problems, when computer evidence is at issue, access to the computer at a Government facility is never going to amount to ample opportunity. The existence of these problems cause this Court concern about a defendant's right to a fair trial as encompassed in the Fifth and Sixth Amendments. However, the Government said it would provide a private room with phone and Internet connections, which the defense team could access twenty-four-hours-a-day at ICE, both before and during trial. These solutions appear to address all the problems set forth by expert Lawson, except for the issue of additional inconvenience to the defense team and possible damage to equipment while traveling.

Harvey correctly argues that under Constitutional jurisprudence he is entitled to access to evidence. See California v. Trobmetta, 467 U.S. 479 (1984) (citing United States v. Valenzuela-Bernal, 458 U.S. 858, 867 (1982))(stating that to safeguard a criminal defendant's right to be afforded a meaningful opportunity to present a complete defense, the Court has developed "'what might loosely be called the area of constitutionally guaranteed access to evidence'"). However, in this situation, full access will be provided. The Government will accommodate access after hours and for any duration desired by the defense before and during trial upon demand. While this requires the defense team to coordinate with the Government to get into the building and the private room, this Court cannot find precedent for the proposition that inconvenience amounts to a due process violation.

Harvey also correctly argues that he has a right to the assistance of experts. See e.g., Ake v. Oklahoma, 470 U.S. 68, 83 (1985) (noting that indigent defendants have a right to receive the assistance of experts necessary for an adequate defense and holding that when sanity is to be an issue in trial, the state must assure the defendant access to a competent psychiatrist to conduct

15

examinations and help prepare for the defense's preparation and presentation of the evidence). However, this right to expert assistance does not confer a constitutional right to choose a specific expert.  Id.  In this case, this Court finds that there is no evidence to suggest that Harvey will not be able to obtain an expert.  In the Knellinger case, there was testimony from the digital video experts indicating that they would not take the case, leaving the defendant without expert assistance.  471 F. Supp. 2d at 647.  In this case, while Lawson testified that many computer forensic experts are no longer taking cases similar to this one because of the restrictions imposed by 18 U.S.C. § 3509(m), he said his company still conducts computer analyses at Government facilities.  In Knellinger, the digital video experts testified about the increased costs and impossibility of moving their equipment.  471 F. Supp. 2d at 647.  According to the testimony of Mr. Lawson, his company has been moving equipment in order to conduct analyses off-site and nothing presented to this Court suggests that the equipment cannot be moved safely or cannot be located in Anchorage.

Harvey argues that his experts are entitled to confidential evaluation and assessment, citing to Smith v. McCormick, 914 F.2d 1153, 1159-60 (9th Cir. 1990).  In Smith, the court found that a defendant's constitutional right to psychiatric counsel was not satisfied by the court's appointment of a neutral psychiatrist who would report his or her findings to the court. Based on Smith, the right to expert assistance cannot be conditioned on disclosure of the expert's work.  The concerns in Smith, however, are not present in this case.  The Government has offered the defense team private accommodations with 24-hour access.  While a guard will be posted outside of the door, the internal work inside the room will remain confidential.  While the guard may be able to know how long and when the defense is working on the computer evidence,

16

this Court has found no precedent that equates this knowledge to a disclosure of the defense experts' work that was at issue in Smith.

Harvey contends that if the defense team is required to conduct its computer analyses at a Government facility, the Government will have insight into the defense strategy and therefore one-sided discovery will result. According to Harvey, such one-sided discovery is a violation of a criminal defendant's due process rights under Wardius v. Oregon, 412 U.S. 470 (1973) and United States v. Bahamonde, 445 F.3d 1225 (9th Cir. 2006). In Wardius the Court held that an Oregon law requiring the defense to disclose details about its case but not requiring reciprocal discovery obligations on the Government was invalid because such an imbalance in discovery obligations violates due process requirements. In Bahamonde, the Ninth Circuit applied Wardius to find a regulation that required unequal discovery obligations to be invalid as applied. Unequal discovery obligations are not involved in this case. While the defense access to the evidence is logistically more complicated because the defense team will have to make arrangements to get inside the Government facility, Wardius and Bahamonde do not require equal *access* to evidence. It was the imbalance of discovery *disclosures* at issue in those cases. As stated before, the Government has offered the defense team private accommodations with 24-hour access to the hard drive. While the guard may be able to know how long and when the defense is working on the computer evidence, this Court cannot conclude based on the evidence available that such knowledge will result in unintended discovery disclosures or will provide the Government with information about the defense's strategy.

This Court finds that a discovery environment that provides privacy, phone and Internet capabilities, and unlimited access before and during trial, affords ample opportunity and

complies with due process requirements. In the event that the Government does not provide the accommodations as described or if specific problems arise during the discovery process, Harvey should renew his motion at that time.

Similarly, if additional evidence becomes available delineating why this extent of access is constitutionally insufficient —for example, should Mr. Lawson decline the assignment and no expert becomes available to undertake it in Alaska —again the motion should be renewed.

Because the Court finds that the Government has provided ample opportunity to review the alleged child pornography, it is not necessary to resolve Harvey's remaining arguments related to the production of a copy of the alleged child pornography.

## C.  Other Files on Hard Drives

The hard drives in question also contain online chats and emails between Harvey and an undercover officer. This evidence is relevant to prove the charge of attempted aggravated sexual abuse. Defense expert Lawson testified that a forensic examination of such materials could reveal multiple users; determine whether the Internet chats reported by the Government were correctly reported and presented in the proper context; and profile the types of users in any chat rooms that may be at issue in the case.

Thus, it remains necessary to address Harvey's request for a copy of the computer files contained on the two hard drives, which are not visual depictions of child pornography. See 18 U.S.C. §3509(m) (incorporating the definition of child pornography found at 18 U.S.C. §2256). The defense makes this request pursuant to Rule 16 of the Federal Rules of Criminal Procedure, United States v. Hill, 322 F. Supp. 2d 1081 (C.D. Call 2004), and the Fifth and Sixth Amendments to the Constitution.

18

Rule 16(a)(1)(E) states:

> Upon a defendant's request, the government must permit the defendant to inspect and to copy or photograph books, papers, documents, data, photographs, tangible objects, buildings or places, or copies or portions of any of these items, if the item is within the government's possession, custody, or control and:
>
> > (i) the item is material to preparing the defense;
> >
> > (ii) the government intends to use the item in its case-in-chief at trial; or
> >
> > (iii) the item was obtained from or belongs to the defendant.

Fed. R. Crim. P. 16(a)(1)(E)**.**

The Walsh Act clearly nullifies the copying requirement of Rule 16 related to visual depictions of child pornography, stating :

> . . .Notwithstanding Rule 16. . .a court shall deny, in any criminal proceeding, any request of the defendant to copy, photograph, duplicate, or otherwise reproduce any property or material that constitutes child pornography. . .

The question remains whether the statute's intent was to deprive a defendant of copies of the materials on a computer hard drive which are clearly outside the statutory definition of child pornography yet inextricably entwined within the structure of the hard drive so they cannot be "partially copied." Both parties in this litigation acknowledged that it is not possible to partially copy a computer hard drive without risking destruction of the original format and configuration of material on that drive. (Doc. 59 at 15, Doc. 46 at 18).

19

Federal Agent Laws testified that prior to the Walsh Act, mirrored hard drives containing copies of child pornography were delivered to defense attorneys and experts for discovery purposes. With a protective order in place, there had never been an instance in Alaska's history when the contraband was copied or illicitly distributed. (Tr. 106). He also testified he was unaware of any instance in the country when that occurred. The single time a hard drive with contraband on it disappeared, it had been in the custody of the Government, he said. (Tr. 110-111).

Given Agent Laws' testimony and the paucity of legislative history, it is difficult to accurately determine the purpose of the statute. The Walsh Act greatly increases the inconvenience, difficulty, and expense connected with both the prosecution and defense of child pornography offenses. The Government perceives the statute to require a Government agent to sit outside the door of a room while defense experts examine the hard drives and prepare for trial—a process that can require days or weeks. Similarly, defense expert time is spent traveling to the Government facility and returning to his lab as needed for equipment and expert consultations. This drives up the cost for the parties. United States v. Flinn, No. S-05-314, 2007 WL 3034932, at *5 (E.D. Cal. Oct. 16, 2007) (stating that the statute causes extra costs to be incurred). When a defendant is represented at taxpayer expense, the increased costs charged by the defense forensic examiner are ultimately paid by the taxpayer. See 18 U.S.C. § 3006A(e). When considering the new statute, one judge stated:

> One could reasonably argue that §3509(m) is legislation by anecdote, and is an overreaction to an infrequent problem, the burdens of which outweigh the possible benefits. However, Congress gets to make its judgments on less than

empirically perfect data. Except in the most arbitrary situations, concerns

about the wisdom of legislation are to be raised before Congress.

Flinn, 2007 WL 3034932, at *6.

Thus, it is this Court's duty, based on the plain meaning of the statutory language, to

determine whether Congress intended to prohibit the copying of non-pornographic materials on a

computer hard drive. The statute includes a definition of child pornography:

. . .[A]ny visual depiction, including any photograph, file, video, picture, or

computer or computer-generated image or picture, whether made or produced by

electronic, mechanical or other means, of sexually explicit conduct. . .

18 U.S.C. §2256(8). And the statute further defines a "visual depiction" to include

"Undeveloped file and videotape and data stored on computer disk or by electronic means which

is capable of conversion into a visual image." 18 U.S.C. §2256(5).

It is clear that the drafters of the Walsh Act anticipated that the visual depictions that

contained child pornography could be stored on a computer hard drive. It remains uncertain

whether the drafters had the requisite knowledge to recognize that a hard drive containing child

pornography would be inextricably entwined with non-pornographic material that Rule 16

directed be copied.

It is unnecessary for this Court to resolve the question in the present case because the

Government has offered to provide access to the hard drive under circumstances this Court has

found to be coterminous with the Constitutional requirements embodied in the Fifth and Sixth

Amendments. Examination of the materials in the format of the hard drive must occur within the

Government facility.

21

However, to whatever extent copies of non-pornographic materials can be downloaded and copied, without compromising the forensic integrity of the hard drive, this should be done pursuant to Rule 16 and the Fifth and Sixth Amendments to the Constitution. There is nothing in the plain language of § 3509(m) to prohibit it.

In Flinn, the court considered the expert request to remove downloaded materials which were not child pornography from the custody of the Government facility. The Court ruled:

> With the exception of materials which would be considered child pornography under federal law, the expert may take off site that electronic or electronically derived information necessary for his examination or report; the expert will certify in writing that he has taken no materials which would be considered child pornography under federal law; and that he has not caused any such child pornography to be sent off site.. . . With the exception of a defense expert failing to so certify, no government official, or any person connected with the government, shall examine or acquire in any fashion any of the items used by the expert in order to conduct the defense analyses. In the event that a defense witness fails to certify that his items/materials/information to be taken off site do not contain child pornography, government officials may inspect or examine the items/material/information in order to ensure that prohibited child pornography has been removed.

Flinn, 2007 WL 3034932, at *6.

## IV. **CONCLUSION**

This Court finds that the conditions for review offered by the Government in this case, when combined with the defendant's ability to download and copy the discovery files which are not child pornography, will meet the Constitutional requirements of due process and a fair trial. Therefore, Defendant Harvey's Motion for Order Compelling Discovery of All Computer-Related Evidence Seized From Danny Harvey is HEREBY DENIED.

In the event Harvey, through his attorney and expert, chooses to examine the two computer hard drives at the ICE facility in Anchorage, access by defense personnel to the hard drives shall take place pursuant to the following terms:

1) A private room will be provided for the defense examination. No Government agents will be permitted inside the room;

2) The expert will be permitted to bring whatever equipment, books or records, he believes necessary to conduct the examination;

3) The private room will have land line phone access and will have high-speed Internet access available;

4) The defense expert and attorney will have 24-hour access to the room upon demand. They will be escorted to and from the room by a Government employee;

5) The defense expert and attorney will not remove any hard drive, partial hard drive or visual depictions of child pornography from the room either physically or via internet;

6) With the exception of materials which would be considered child pornography under federal law, the expert may download files or portions of files as long as the forensic integrity of the hard drive is not altered. He may take off site that electronic or

23

electronically derived information necessary for his examination or report; the expert will certify in writing that he has taken no materials which would be considered child pornography under federal law and that he has not caused any child pornography to be sent off site;

7) Except when a defense expert or attorney fails to provide this certification, no Government official or any person connected with the Government, will examine or acquire in any fashion any of the items used by the expert in order to conduct the defense analyses. However, should a defense expert fail to certify that the items to be taken off site do not contain child pornography, Government officials may then inspect or examine the materials in order to ensure that prohibited child pornography has not been removed; and

8) The defense expert will certify that, upon completion of the hard drive examination, all files and remnants of the hard drive are permanently removed and deleted from the defense computer equipment.

DATED this 6th day of January, 2008, at Anchorage, Alaska.

/s/ Deborah M. Smith
DEBORAH M. SMITH
United States Magistrate Judge

24